No. 29,162.

THE STATE OF KANSAS, *Appellee*, v. J. R. McMANIS, *Appellant*.

(282 Pac. 588.)

Opinion filed December 7, 1929.

*Burt Comer, Harold H. Malone* and *Forest V. McCalley*, all of Wichita, for the appellant.

*William A. Smith*, attorney-general, *R. O. Mason*, assistant attorney-general, and *Bert E. Church*, county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal presents the wail of a bootlegger who, finding himself trapped, threatened violence to his captors, then attempted to bribe them, then attempted either to suborn perjury or to inveigle one of the captors into a position which would subject him to impeachment as a witness, and then perjured himself at the trial in a pitiful effort to show he was "framed." The nasty story will not be told in detail.

McManis and Roberts were bootleggers, and McManis was convicted on six counts of an information filed in the district court charging violation of the liquor law. Two of the counts were for possession—a quart and a gallon of whisky; two were for sales—one of the quart and one of the gallon; one was for transportation; and one was for maintaining an automobile nuisance. McManis was also charged with driving an automobile on a public highway while he was intoxicated. He did drive his automobile while he was pretty drunk, but a state agent sitting in the rear seat held a pistol at his back to see that he did drive, and under instructions governing the subject, the jury found he was not guilty on that count.

Kampling and Hunter were state agents assisting officers in a

liquor clean-up. They had trifled with the liquor law, and so were qualified to ensnare bootleggers. They purchased the quart in the forenoon and the gallon in the afternoon. Delivery of the gallon was made on a highway at the four-mile crossing west of Wellington. As soon as delivery was made, McManis and Roberts were arrested, and after a display of violence McManis tried to bribe the agents.

A complaint was filed charging McManis with liquor misdemeanors. Felony complaints were also filed against McManis and Roberts. McManis was charged with attempt to bribe, and Roberts was charged with persistent violation of the liquor law. Both felony charges, except the element of previous conviction in Roberts' case, arose out of the transaction at four-mile corner. Both preliminary examinations were set for the same day, and McManis and Roberts appeared in person and by counsel. The misdemeanor charge against McManis was dismissed, and the information on which the conviction under review rests was filed in the district court. Because the two felony charges arose out of the transaction at four-mile corner it was not necessary there should be two investigations. In form one preliminary examination covered both felony charges. Hunter was a witness and told what occurred. His testimony necessarily extended to the entire transaction culminating at four-mile corner.

Hunter did not appear at the trial of McManis on the information, although subpœnas and a writ of attachment were employed in an effort to secure his attendance. Over objection Hunter's testimony given at the preliminary examination was read to the jury. McManis contends the testimony could not be used because it was given in support of a bribery charge against him, and a liquor charge against a third person—Roberts.

The fact that Roberts was involved is not material. Hunter's testimony was given in a criminal proceeding by the state against McManis. The testimony was read in a criminal proceeding by the state against McManis. So the parties were the same. The bribery story could not be understood unless the liquor story were told, and the liquor story was not complete unless the bribery story were told. So the identical subject was under investigation in both proceedings. McManis appeared in the bribery proceeding in person and by counsel, and met the witness Hunter face to face. Hunter was duly sworn as a witness in the bribery proceeding, and the testimony read in the liquor proceeding was given under the sanc-

tion of an oath. Hunter was subject to cross-examination by Mc-Manis when Hunter's testimony was given. The result is, the fact that the proceeding before the justice of the peace and the proceeding in the district court bore different labels did not affect the admissibility of Hunter's testimony in the district court proceeding.

The principle involved was stated and applied in the case of *State v. Wilson*, 24 Kan. 189. Wilson was arrested on a charge of assault with intent to kill Benjamin Ball. Ball testified at the preliminary examination. Wilson was privileged to attend the preliminary examination. He did not do so, but he was represented by counsel. Afterwards Ball died, and the charge against Wilson was changed to murder in the second degree. At the trial on the murder charge Ball's testimony given at the preliminary examination was read in evidence. In the opinion the court said:

"The two essentials, the oath and the right to cross-examine, existed in this case. There was a judicial proceeding to which the defendant was a party. The testimony was given under oath. The defendant had a right to be present, was in fact represented by counsel, and could have cross-examined fully and without limit or restraint. The act, the subject of inquiry, was the same; and while the charge is different, the difference results from matters occurring after the giving of the testimony, and in no manner changing the actual facts of inquiry." (p. 195.)

In this instance we have identity of parties, identity of subject of inquiry, presence of defendant and his counsel at the preliminary examination, testimony given under oath, privilege to cross-examine, and inability to procure attendance of the witness who gave the testimony at the trial.

Defendant makes numerous complaints of the proceedings. The complaints have all been examined. Some are trifling, and none is of such substantial merit as to require ceremonious treatment.

The judgment of the district court is affirmed.